IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THERESA L. MAY,                    )
                                   )
              Plaintiff,           )
                                   )    No.  CV-04-1364-HU
     v.                            )
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social             )    FINDINGS & RECOMMENDATION
Security,                          )
                                   )
              Defendant.           )
_____   )

Max Rae
P.O. Box 7790
Salem, Oregon 97303

     Attorney for Plaintiff

Karin J. Immergut
UNITED STATES ATTORNEY
District of Oregon
Neil J. Evans
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Daphne Banay
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

     Attorneys for Defendant

1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiff Theresa L. May brings this action for judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction under 42 U.S.C. §§ 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).

Defendant moves to remand the case for further proceedings because of errors committed by the Administrative Law Judge (ALJ). Plaintiff contends that the case should be remanded for a determination of benefits. Because I agree with plaintiff, I recommend that defendant's motion be granted to the extent defendant seeks a remand, but denied to the extent it seeks additional proceedings upon remand.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on April 12, 2002, alleging an onset date of September 1, 2001. Tr. 25, 62-64, 417-19. Her applications were denied initially and on reconsideration. Tr. 38-42, 45-47, 421-25, 427-29.

On November 17, 2003, plaintiff, represented by counsel, appeared for a hearing before an ALJ. Tr. 432-60. On January 12, 2004, the ALJ found plaintiff not disabled. Tr. 23-34. The Appeals Council denied plaintiff's request for review of the ALJ's decision. Tr. 6-10.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on depression and post-traumatic stress disorder. Tr. 26, 102. At the time of the November 17, 2003 hearing, plaintiff was forty-seven years old. Tr. 62, 417. She is a high school graduate. Tr. 26, 108, 437.

Her past relevant work is as a customer service nursery worker, a customer service deli worker, an office helper, a photo finisher, and a tractor driver.  Tr. 26, 142, 455-56.

I.  Medical Evidence

Defendant concedes that the ALJ improperly rejected some of the opinions expressed by George Suckow, M.D., plaintiff's treating psychiatrist.  I need not discuss medical evidence other than that from Dr. Suckow as it is not relevant to the motion to remand and it is not relevant to the determination of whether to remand for additional proceedings or for an award of benefits.

Dr. Suckow treated plaintiff at the West Salem Mental Health Clinic, at least since sometime in the fall of 1999.  Tr. 241-317. The record is unclear as to when her treatment with him actually began.  The first chart note from Dr. Suckow in the record is dated September 22, 1999, but the tenor of the note suggests she had seen him previously.  Tr. 315.  He continued to treat her at least through mid-August 2003.  Tr. 397.

Plaintiff had periodic appointments with Dr. Suckow, along with regular therapy appointments with therapist Karen Keller, M.A., also at the West Salem Mental Health Clinic.  Tr. 241-317. The treatment records continue from the fall of 1999 to October 2003. Id.; Tr. 397-412.  During this time, Dr. Suckow's diagnoses of plaintiff were borderline personality disorder, disassociative identity disorder (DID) (formerly multiple personality disorder), post-traumatic stress disorder (PTSD), and depression.  E.g., Tr. 315 (borderline personality disorder, DID), 311 (borderline personality disorder, DID), 305 (DID), 300 (DID, PTSD), 280 (DID), 268 (DID), 262 (DID), 245 (borderline personality disorder, DID),

3 - FINDINGS & RECOMMENDATION

241 (DID), 397 (depression, DID), 402 (DID, depression), 408 (DID).

Dr. Suckow's treatment notes indicate that plaintiff has been suicidal, has complained of depression, has experienced panic attacks, has had trouble sleeping, and has experienced nightmares and flashbacks. E.g., Tr. 243, 273, 290, 300, 311. He has treated her with a variety of medications, some with fairly positive results and others not as successful. E.g., Tr. 307 (noting that plaintiff "seems to be doing a little better" and continuing Effexor, Restoril, and Ambien); 300 (in response to complaints about panic and anxiety attacks, Dr. Suckow prescribed Klonipin and continued her on Effexor and Ambien, but reduced the Restoril); 297 (noting that plaintiff "seems to be doing a lot better," discontinuing Klonipin because of headaches, but keeping other medications); 286 (plaintiff reports she is "pretty stable" and does not want to change medications other than discontinuing Ambien); 265 ("seems to be pretty stable" and "getting along fairly well," continuing on a lower dose of Effexor and Ambien); 256 (started Celexa following period of being acutely suicidal); 249 (switched from Celexa to Lexapro); 243 (new prescription for Dalmane for sleep; continued on Lexapro).

In November 2003, Dr. Suckow completed a "Medical Source Statement" in which he opined that plaintiff was limited to part-time work as was currently being performed because of limited stamina. Tr. 413. He ranked her as being "fair"[1] in (1) the

---

[1] The Medical Source Statement defines "fair" as "[s]ubstantial loss of ability to perform the named activity in regular, competitive employment and, at best, could do so only in a sheltered work setting where special considerations and attention are provided." Tr. 413.

4 - FINDINGS & RECOMMENDATION

ability to remember work-like procedures, (2) the ability to maintain attention for extended periods of two-hour segments, (3) the ability to maintain regular attendance and be punctual within customary tolerances, (4) the ability to sustain ordinary routine without special supervision, (5) the ability to work in coordination with or proximity to others without being unduly distracted by them, (6) the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (7) the ability to accept instructions and respond appropriately to criticism from supervisors, (8) the ability to make simple work-related decisions, and (9) the ability to respond appropriately to changes in a routine work setting. Tr. 413-14.

He considered plaintiff to be "good"[2] in (1) the ability to understand and remember very short and simple instructions, (2) the ability to carry out very short and simple instructions, (3) the ability to ask simple questions or request assistance, and (4) the ability to be aware of normal hazards and take appropriate precautions. Id.

Dr. Suckow considered plaintiff to have "poor/no[]"[3] ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

___

[2]  The Medical Source Statement defines "good" as "[s]ome loss of ability to perform the named activity but still capable of performing it in regular, competitive employment."  Tr. 413.

[3]  The Medical Source Statement defines "poor/none" as "[c]omplete loss of ability to perform the named activity in regular, competitive employment and in a sheltered work setting; could do so only to meet basic needs at home."  Tr. 413.

5 - FINDINGS & RECOMMENDATION

Tr. 414.

Dr. Suckow opined that plaintiff had "physical and/or mental impairments resulting from anatomical, physiological or psychological abnormalities shown by acceptable clinical and/or laboratory diagnostic techniques" and that those impairments could reasonably be expected to produce the functional limitations he previously set forth.  Tr. 415.  He indicated that plaintiff's impairments or conditions were depression and DID.  Id.  He considered them to be permanent and to have existed and persisted with restrictions at least as severe as indicated since at least September 1, 2001.  Id.  He opined that the exact onset date was unknown, but that the conditions had persisted for years.  Id.

II.  Lay Witness Testimony

Defendant concedes that the ALJ improperly failed to consider the lay observations of Keller[4] and of plaintiff's friend Karen McGilchrist.  Defendant further concedes that the ALJ failed to provide a basis for rejecting the testimony of plaintiff's employer Helen Abel.  Accordingly, the testimony of all of these witnesses is relevant.

Keller's treatment notes are intertwined with Dr. Suckow's.  Tr. 241-317.  As indicated above, Keller provided regular therapy to plaintiff while Dr. Suckow saw her intermittently.  Over the

_____

[4]  Although Keller is apparently a trained therapist, she is not an acceptable medical source under 20 C.F.R. §§ 404.1513(a), 416.913(a).  Rather, such professionals are "other sources" as described in the regulations.  20 C.F.R. §§ 404.1513(d), 416.913(d).  Under Ninth Circuit precedent, testimony from "other source" professionals is evaluated under the standard for other lay witnesses.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

6 - FINDINGS & RECOMMENDATION

course of her treatment, Keller noted plaintiff's recurrence of DID symptoms, practice of "self-harm" behaviors, states of crisis including suicidal ideation and hopelessness, depression, anxiety, and fatigue. E.g., Tr. 316, 314, 313, 312, 308, 301, 296, 292, 291, 276, 264, 263, 261, 259, 249.

On January 20, 2003, McGilchrist indicated that she saw plaintiff daily and that plaintiff left the house daily to work for three hours. Tr. 163-64. Other than that, she never went to the grocery store, never visited relatives, rarely did other types of shopping or visited friends, and did not participate in social activities. Tr. 164.

She further noted that plaintiff had lost interest in everything. Tr. 165. She indicated that plaintiff did not participate in several activities she used to do because of depression. Tr. 168. McGilchrist remarked that plaintiff had trouble sleeping, had recently lost weight, had a poor appetite, and no longer did much around the house. Tr. 169. She prepared one meal for herself per day if she felt up to it. Id. While plaintiff did laundry once per day, she had lost interest in, or did not care about, other household activities such as dusting, vacuuming, emptying trash, yard work, gardening, and home repair. Tr. 170. She no longer had a desire to do anything around the house. Tr. 171.

McGilchrist indicated that plaintiff could not usually remember and discuss what she had read. Id. McGilchrist noted that plaintiff took Lexapro and Ambien daily and that the medication helped sometimes in regard to plaintiff's nightmares. Tr. 172. She described plaintiff's typical day as waking up early,

7 - FINDINGS & RECOMMENDATION

showering and dressing for work, working from 11:00 a.m. to 2:00 p.m., then returning home and laying in bed. Tr. 173. She opined that plaintiff was "very depressed" and that this would interfere with her ability to work on a regular basis. _Id._ McGilchrist noted that plaintiff's depression had been debilitating in recent years and that she had attempted suicide several times. Tr. 174.

Abel testified at the hearing on plaintiff's behalf. Tr. 447. At that time, she had known plaintiff for approximately three and one-half years. _Id._ Abel met plaintiff when they worked together at "Dottie's in Wilsonville" but since that time, Abel had become plaintiff's employer when she hired plaintiff to work at a deli Abel owns in Woodburn. Tr. 448. At Dottie's, Abel noticed that plaintiff could not do "bookwork" and had trouble with the register, although she was good with the customers. _Id._ Abel filled in for plaintiff several times when plaintiff did not come to work because she was feeling bad. _Id._

Despite these problems, Abel hired plaintiff to work at the deli because she liked her. _Id._ At the deli, plaintiff takes orders, helps make sandwiches, and sometimes runs the register. _Id._ Abel described plaintiff as sometimes being "out of it" at work and noted that she can be emotional and upset. Tr. 449. Abel has to have someone else do plaintiff's jobs on those occasions. _Id._ Additionally, Abel has a backup employee for plaintiff because plaintiff misses a lot of work. _Id._ Abel never knows if plaintiff is going to be there. _Id._ She indicated that she was working with plaintiff to keep her employed because she knows plaintiff needs the job, but she noted that plaintiff is upset, emotional, and depressed. _Id._

8 - FINDINGS & RECOMMENDATION

Plaintiff's work schedule is three hours per shift, three shifts per week. Tr. 449. At least once per week she is extremely late and when she comes in, Abel can tell that plaintiff has had a bad morning or a bad day. Tr. 450. Abel will call the backup in such situations. Id.

Plaintiff makes a lot of mistakes with the cash register, but is wonderful with the customers. Id. Abel described plaintiff as shaking so much that she worries when plaintiff carries a plate of food or hands money back to a customer. Id. Some days, however, plaintiff can be very calm. Id. Abel has observed plaintiff lose concentration at work. Tr. 450-51.

III. Plaintiff's Testimony

Defendant concedes that the ALJ failed to fully consider all of plaintiff's testimony in finding her subjective complaints not entirely credible. Thus, plaintiff's testimony at the hearing is relevant.

Plaintiff testified that she worked at Abel's deli, three hours per day. Tr. 438. She left her previous job working for a rose grower because she was missing a lot of work due to her depression. Tr. 439. She also described having problems with the book work at Dottie's in addition to having attendance problems there. Tr. 441.

Plaintiff stated that she did not work additional hours at the deli owned by Abel because she has a hard time concentrating and three hours is about what she can do before she has a hard time doing what Abel asks her to do. Tr. 442. She often makes errors in taking orders and making change, but Abel can figure out the paperwork after plaintiff is off the till. Id. After her shift,

9 - FINDINGS & RECOMMENDATION

plaintiff comes home and takes it easy because she needs to calm down. Tr. 444.

Plaintiff was visibly trembling or jiggling during the hearing, which she attributed to being anxious. Tr. 443. She indicated that it occurs often. Id.

She sometimes reads for pleasure, but she had not read a book all the way through for a few years and has problems remembering what she reads. Tr. 444.

Her medications at the time were Lexapro and Triazolam. Tr. 445. They help her with depression and nightmares. Id. She had also been prescribed Ambien and Sonata, but had run out of both of those. Id.

                        THE ALJ'S DECISION

The ALJ found that plaintiff had not engaged in any substantial gainful activity since her alleged onset date. Tr. 26, 33. The ALJ then found that plaintiff had severe impairments of depression, an anxiety-related disorder, and a history of alcohol abuse. Tr. 28, 33. While finding the impairments to be severe, he concluded they did not meet or equal any listed impairments. Id.

The ALJ determined that plaintiff's mental impairments resulted in mild restrictions of activities of daily living. Tr. 28. He found that she had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace. Id. He determined that she was limited to "simple, 1-2-3 step work with limited interaction with the public and coworkers[]" and that she could perform light to medium work. Tr. 31.

Based on this assessment of plaintiff's residual functional

10 - FINDINGS & RECOMMENDATION

capacity (RFC), the ALJ, relying on the testimony of a vocational expert (VE), concluded that plaintiff could return to her former jobs as an office helper, photo refinisher, and tractor driver. Tr. 31. However, because the ALJ was unclear whether these jobs were actually performed at the substantial gainful activity level in order to be considered past relevant work, he proceeded to the fifth step of the sequential evaluation and determined, again based on the testimony of the VE, that she could perform the jobs of food preparation worker and stock checker, jobs existing in significant numbers in the national economy. Tr. 31-32. Accordingly, the ALJ concluded that plaintiff is not disabled. Tr. 32, 33.

## STANDARD OF REVIEW & SEQUENTIAL EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991). The claimant bears the burden of proving disability. Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

11 - FINDINGS & RECOMMENDATION

disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

The court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Baxter, 923 F.2d at 1394. Substantial evidence means "more than a mere scintilla," but "less than a preponderance." Id. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.

STANDARDS FOR REMAND

The court has discretion to reverse the Commissioner's final decision with or without a remand for further administrative

12 - FINDINGS & RECOMMENDATION

proceedings. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1177 (9th Cir. 2000). When an ALJ improperly rejects evidence, as defendant concedes occurred here, the court should credit such evidence and remand for an award of benefits when: "'(1) the ALJ failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" <u>Moore v. Commissioner</u>, 278 F.3d 920, 926 (9th Cir. 2002) (quoting <u>Smolen v. Commissioner</u>, 80 F.3d 1273, 1292 (9th Cir. 1996)).

This court is aware of Ninth Circuit cases recognizing that the "crediting as true" rule is not mandatory. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003). Thus, when a court finds that the ALJ improperly rejected the subjective symptom testimony of a claimant, it has some flexibility and is not required to credit the testimony as a matter of law and direct an award of benefits. <u>Id.</u> It is unclear whether this flexibility is available where, as here, the ALJ has improperly rejected the opinion of a treating physician. <u>See Benecke v. Barnhart</u>, 379 F.3d 587, 594-95 (9th Cir. 2004) (in a post-<u>Connett</u> case, Ninth Circuit credited the opinions of treating physicians and claimant's testimony when ALJ failed to provide legally sufficient reasons for rejecting this evidence, and reversed a district court order of remand for further administrative proceedings and instructed that the district court remand for payment of benefits).

However, I decline to resolve that legal issue. Even if the rule is not mandatory, for the reasons explained below, I exercise

13 - FINDINGS & RECOMMENDATION

my discretion to credit Dr. Suckow's opinion as a matter of law. I further exercise my discretion to credit the testimony of the other witnesses as well.

DISCUSSION

I. The ALJ's Errors in Improperly Rejecting Testimony

   A. Dr. Suckow

The ALJ gave significant weight to Dr. Suckow's opinion that plaintiff was limited in her abilities to perform detailed tasks and interact with coworkers. Tr. 30. However, the ALJ rejected the rest of Dr. Suckow's opinions, stating that "there is no evidence that the claimant would have difficulty remembering work-like procedures. She exhibits no memory deficits and has been capable of remembering procedures at her current job." Id.

Defendant concedes that this basis for rejecting Dr. Suckow's opinion is not supported in the record because it ignores plaintiff's testimony in which she described making several errors and having a hard time concentrating on what she was supposed to do in her job. Tr. 442. The ALJ also failed to acknowledge that Abel described plaintiff as making a lot of mistakes with the cash register and observed her to lose concentration while making a sandwich. Tr. 450-51.

The ALJ also rejected Dr. Suckow's opinion because "there is no evidence that she has poor or no ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 30. Defendant concedes that this basis of rejection is also not supported in the record because it ignores plaintiff's testimony

14 - FINDINGS & RECOMMENDATION

that she did not work more than three hours per day, less than one-half of a full shift, because she had a hard time concentrating on what she was supposed to do, and because it ignores Abel's testimony that she has had to ask someone else to do plaintiff's job when plaintiff was "out of it," emotional, upset, and shaking, and has to have a backup for plaintiff because plaintiff misses a lot of work. Tr. 449. Defendant concedes that the ALJ also failed to consider Abel's testimony that although plaintiff only worked three hour shifts, three days per week, she still was extremely late at least once per week, necessitating a call to the backup employee. Tr. 449-50.

Another basis the ALJ gave for rejecting Dr. Suckow's opinion was that "while she is unreliable in her work attendance, treatment records reflect her difficulties are related more to her many personal issues than to her medically determinable impairments." Tr. 29. The ALJ noted that plaintiff "has related to her counselor a multitude of stressors including a recent divorce, internet searches and traveling in pursuit of lesbian relationships, the death of her mother, and problems dealing with family members." Tr. 30.

Defendant concedes, however, that the treatment records regarding the stressors cited by the ALJ do not state whether plaintiff's unreliable work attendance was related to her personal issues rather than to her medically determinable impairments. Defendant also concedes that the ALJ did not address Dr. Suckow's opinion that plaintiff's depression and DID were impairments resulting from anatomical, physiological, or psychological abnormalities shown by acceptable clinical and/or laboratory

15 - FINDINGS & RECOMMENDATION

diagnostic techniques and that these impairments could reasonably be expected to produce the functional limitations assessed by Dr. Suckow, including plaintiff's "fair" ability to maintain regular attendance and be punctual within customary tolerances. Tr. 414, 415.

## B. Lay Testimony

### 1. Keller, McGilchrist, & Abel

Defendant concedes that the ALJ failed to consider Keller's lay observations of plaintiff's fatigue, anxiety, and depression, which are set out above. As to McGilchrist's written testimony and Abel's oral testimony, defendant concedes that the ALJ erred in failing to fully evaluate their testimony. Defendant notes that the ALJ failed to discuss McGilchrist's statement at all and only mentioned Abel's testimony. The ALJ did not provide any reasons to reject either of the witnesses's statements.

### 2. Plaintiff's Testimony

The ALJ rejected plaintiff's subjective complaints as not entirely credible because she had traveled frequently, noting her reports of traveling with her partner and living out of motels, having a good time in Las Vegas on a trip, and taking a ten-day trip to the east coast to meet a woman she met over the internet. Tr. 29. However, defendant concedes that the ALJ failed to consider that the November 15, 2001 treatment note mentioning plaintiff's recent travel with her partner and living out of motels, also mentioned that plaintiff looked exhausted, ill, and very depressed, was not eating again, and thought about dying, but did not have a plan. Tr. 261. Defendant further notes that the ALJ failed to consider that the May 23, 2003 treatment note

16 - FINDINGS & RECOMMENDATION

mentioning plaintiff's east coast trip also stated that "her dependency needs are very strong and seem to override other reasoning," that plaintiff was obsessing over the woman and making herself sick, and that plaintiff was extremely anxious. Tr. 401. Thus, defendant concedes, the record does not support the ALJ's articulated basis for rejecting plaintiff's testimony.

The ALJ also rejected plaintiff's subjective complaints because she works "part-time" and her "employer indicates she does well with customers and 'they love her.'" Tr. 29. Defendant notes, however, that the ALJ failed to address the testimony from plaintiff and Abel regarding plaintiff's many difficulties when working, even part-time.

Defendant concedes that the ALJ's statement that the treatment records reflect that plaintiff's work attendance problems are related more to her many personal issues than to her medically determinable impairments, is not supported by the record. Defendant notes that the ALJ did not explain what treatment records support his conclusion about the cause of plaintiff's unreliable attendance and that the treatment notes reflecting the multitude of stressors in plaintiff's life and listed by the ALJ did not address the attendance issue. Finally, defendant also concedes that the ALJ failed to specify what evidence in the record supported his conclusion that plaintiff's subjective complaints were contradicted by her ability to "perform all activities of daily living." Tr. 29. Defendant notes that the evidence in fact shows that plaintiff did not perform all activities of daily living and she either did not care or had lost interest in doing most activities. E.g., Tr. 152, 157, 158, 159-60, 162, 164, 165, 169, 170, 171, 183, 212, 443-

17 - FINDINGS & RECOMMENDATION

44.

II.  Remand Analysis

    A.  Failure to Provide Legally Sufficient Reasons
        for Rejecting Evidence

No further discussion of this factor is required given that defendant concedes that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Suckow's opinions, as well as the testimony of Keller, McGilchrist, Able, and plaintiff. My independent review of the record confirms that defendant is correct. See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (when treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (while lay witnesses are not competent to testify to medical diagnoses, they may testify as to a claimant's symptoms or how an impairment affects the ability to work); Smolen, 80 F.3d at 1281-82 (once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering; in assessing plaintiff's credibility ALJ must consider claimant's work record, observations of treating and examining physicians and other third parties, functional restrictions caused by symptoms, and plaintiff's daily activities); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) (ALJ had to give specific reasons, germane to the witness, for disregarding lay witness testimony regarding claimant's condition as lay eyewitness can tell whether someone is suffering or merely malingering).

18 - FINDINGS & RECOMMENDATION

B.  Outstanding Issues

Defendant argues that remand for additional proceedings is necessary because there are outstanding issues in regard to the re-evaluation of the testimony of Dr. Suckow, Keller, McGilchrist, Abel, and plaintiff, and further, because there are outstanding issues in regard to plaintiff's RFC and the VE testimony.

Defendant first contends that remand is necessary to allow the ALJ to further evaluate Dr. Suckow's reports and opinions, to further evaluate Keller's reports and opinions, to further consider the lay witness evidence of McGilchrist and Abel, and to further evaluate plaintiff's credibility.  Ninth Circuit cases indicate that remanding only to evaluate improperly rejected testimony is not the type of "outstanding issue" involved in the three-part Moore/Smolen remand analysis.

Appellate cases suggest that appropriate "outstanding issues" include (1) where the VE has not addressed the limitations as established by improperly discredited evidence, Harman, 211 F.3d at 1180[5]; (2) where the ALJ has not had an the opportunity to evaluate relevant evidence submitted only to the Appeals Council, Harman, 211 F.3d at 1180; (3) when the agency must consider in the first instance an issue it did not previously address, INS v. Ventura,

---

[5]  A more recent Ninth Circuit case suggests that a remand for a determination of benefits may be appropriate even in the presence of only limited VE testimony when the record as a whole establishes that the claimant is unable to perform gainful employment in the national economy, even though the VE does not address the precise work limitations established by the improperly discredited testimony.  Benecke, 379 F.3d at 595.

19 - FINDINGS & RECOMMENDATION

537 U.S. 12, 13 (2002) (per curiam)[6]; and (4) other relevant procedural issues, Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) (noting such procedural requirements as insured status, application on record, attainment of retirement age).

Remanding simply to allow the ALJ to perform the analysis he or she should have done properly in the first instance is not the type of "outstanding issue" recognized in Harman and other cases addressing this issue. E.g. Benecke, 379 F.3d at 595 ("Allowing the Commissioner to decide the [credibility and treating physician opinion evidence] issue again would create an unfair 'heads we win; tails let us play again' system of disability benefit adjudication."); Moisa, 367 F.3d at 887 (noting that the "Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings"); see also Varney v. Secretary, 859 F.2d 1396, 1398-99 (9th Cir. 1988) ("Delaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage - financial, medical, and emotional.").

Defendant's attempt to identify outstanding issues in regard to the improperly rejected or neglected testimony or opinions of Dr. Suckow, Keller, McGilchrist, Abel, or plaintiff, is nothing

---

[6] An example would be where the VE testimony procured by the ALJ was limited to the step four analysis of the ability to perform past relevant work and with the crediting of improperly rejected evidence, it becomes necessary upon remand to proceed to the step five analysis of performing other work in the national economy.

more than providing the ALJ with a second and unwarranted opportunity to re-evaluate their testimony. As _Benecke_ and _Moisa_ make clear, such an opportunity is not a valid basis for remand.

Second, defendant attempts to manufacture "outstanding issues" related to plaintiff's RFC and the VE testimony regarding plaintiff's ability to perform her previous work or other work in the national economy. Defendant argues that because remand is necessary for the ALJ to further evaluate Dr. Suckow's opinions, Keller's reports, McGilchrist's testimony, Abel's testimony, and plaintiff's credibility, remand is also necessary for the ALJ to re-evaluate plaintiff's RFC. Continuing in this vein, defendant contends that after the testimony, opinions, and reports of these witnesses are properly evaluated, it may be necessary for the ALJ to obtain additional VE testimony to re-evaluate, based upon a new RFC, plaintiff's ability to perform her previous work or other work in the national economy.

The problem with defendant's argument in this regard is that it is based on defendant's assumption that remand is necessary for the ALJ to first further evaluate the improperly rejected or neglected opinions, reports, or testimony. For the reasons explained immediately above, defendant's assumption is flawed and not supported by the relevant Ninth Circuit case law. When the improperly rejected testimony and opinions are considered, there are no outstanding issues regarding plaintiff's RFC because Dr. Suckow's opinions, described above, constitute an effective assessment of her RFC. And, as discussed below, the VE offered an opinion based on the improperly rejected testimony and opinions regarding plaintiff's ability to maintain competitive employment.

21 - FINDINGS & RECOMMENDATION

Thus, the record in regard to plaintiff's RFC and any relevant VE testimony is fully developed. There are no outstanding issues warranting a remand to the ALJ for further proceedings.

C. Determination of Disability

As noted above, Dr. Suckow opined that plaintiff's ability to remember work-like procedures, to maintain attention for two-hour segments, to maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being unduly distracted by them, and to make simple work-like decisions, was "fair," meaning that she had a substantial loss of the ability to perform the activity in regular, competitive employment and at best, could do so only in a sheltered work setting with special considerations and attention. He also opined that she had a complete loss of ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. He considered plaintiff's impairments to be permanent and to have existed and persisted since at least September 1, 2001.

Testimony from Abel and plaintiff corroborated Dr. Suckow's opinions by relating the limited number of days and hours that plaintiff is able to work, as well as her frequent tardiness and absenteeism, even with her limited hours. Keller's and McGilchrist's testimony further supports Dr. Suckow's opinions by establishing that plaintiff's activities of daily living are also quite limited and that she is in frequent crisis, to the point of attempting suicide more than once.

The VE testified that a person missing two or more days of

22 - FINDINGS & RECOMMENDATION

work per month cannot maintain competitive employment.  Tr. 458.
Moreover, under the Social Security Act, a claimant is disabled if
the claimant cannot work on a "regular and continuing" basis, which
means eight hours a day, five days a week.  See Soc. Sec. Ruling
96-8p (1996 WL 374184); see also Irwin v. Shalala, 840 F. Supp.
751, 763 (D. Or. 1993) (critical inquiry in social security case is
claimant's capacity for work activity on a regular and continuing
basis); Ratto v. Secretary, 839 F. Supp. 1415, 1430 (D. Or. 1993)
(plaintiff is disabled as a matter of law if she is unable to work
an eight-hour day with normal breaks).

The law establishes that if Dr. Suckow's opinions are
credited, along with plaintiff's subjective testimony, and are
considered with Keller's notes and McGilchrist's and Abel's
testimony, plaintiff's limitations are so severe as to preclude her
from maintaining substantial gainful employment.  Thus, when the
improperly rejected or neglected testimony and opinions are
credited, it is clear that plaintiff is disabled under the Social
Security Act.

Accordingly, under the three-part remand test, the ALJ failed
to provide legally sufficient reasons for rejecting the evidence,
there are no outstanding issues that must be resolved before a
determination of disability can be made, and it is clear from the
record that the ALJ would be required to find plaintiff disabled
were such evidence credited.  The appropriate course is to remand
for a determination of benefits.

CONCLUSION

I recommend that defendant's motion to remand (#22) be granted
to the extent that the case is remanded but denied to the extent

that defendant seeks a remand for additional administrative proceedings. I recommend that the case be remanded for a payment of benefits and that a judgment to that effect be entered.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due December 6, 2005. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due December 20, 1005, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this __22nd__ day of __November__, 2005.


___/s/ Dennis James Hubel___
Dennis James Hubel
United States Magistrate Judge

24 - FINDINGS & RECOMMENDATION